UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TDN MONEY SYSTEMS, INC., | Case No. 2:15-CV-2197 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| EVERI PAYMENTS, INC., | |
| Defendant(s). | |

Presently before the court is plaintiff TDN Money Services, Inc.'s motion for partial summary judgment.  (ECF No. 33).  Defendant Everi Payments, Inc., f/k/a Global Cash Access, Inc. filed a response (ECF No. 37), to which plaintiff replied (ECF No. 54).

Also before the court is defendant's counter motion for partial summary judgment.  (ECF No. 41).  Plaintiff filed a response (ECF No. 55), to which defendant replied (ECF No. 64).

Also before the court is defendant's motion for summary judgment.  (ECF No. 49).  Plaintiff filed a response (ECF No. 63), to which defendant replied (ECF No. 66).

**I.     Facts**

The instant action involves a contractual dispute arising from a dealer resale agreement entered into by the parties on April 21, 2010.  (ECF No. 17).  Plaintiff sells ticket redemption kiosks on behalf of manufacturers and retailers.  (ECF No. 17).  Defendant is a manufacturer of these kiosks.  (ECF No. 17).

Plaintiff had a business relationship with Western Money Systems ("WMS"), a former Nevada business that manufactured and sold ticket redemption kiosks.  (ECF No. 17 at 3).  On August 4, 2009, prior to this litigation, defendant acquired WMS.  (ECF No. 17 at 3).

**James C. Mahan**
**U.S. District Judge**

1  WMS entered into a deal with plaintiff on January 1, 2006. (ECF No. 20). The deal appointed plaintiff as an authorized non-exclusive reseller of WMS products. (ECF No. 20). Plaintiff's duties under the agreement were to make direct sales to end-users in its respective territory. (ECF No. 20). The agreement also allowed for WMS to retain its ability to sell directly to end-users. (ECF No. 20). However, sales made by WMS to end-users in plaintiff's territory entitle plaintiff to a commission provided that plaintiff provided the end-user with certain follow-up services. (ECF No. 20). The commission would be "equal to the difference between the net sale amount and the reseller price." (ECF No. 20).

On April 21, 2010, defendant and plaintiff entered into a new contract, containing the same terms as the previous contract. (ECF No. 17). On March 12, 2014, defendant sent a letter to plaintiff informing plaintiff of its intent not to renew the agreement for a subsequent term. (ECF No. 37 at 5). In response, on March 18, 2014, plaintiff sent a letter to defendant informing defendant of its intent to renew the agreement for another year. (ECF No. 37 at 5). The terms of the contract allowed for automatic renewal at the discretion of one party. (ECF No. 17). The contract stated that "if either party delivers notice of its desire to renew the Agreement to the other party no less than 30 days prior to the expiration of the current Term, the Agreement shall be automatically renewed for an additional year." (ECF No. 17).

On November 19, 2015, plaintiff filed the original complaint. (ECF No. 1). Later on January 21, 2016, plaintiff filed an amended complaint alleging four causes of action: (1) intentional interference with contractual relations; (2) intentional interference with prospective economic advantage; (3) breach of contract; (4) breach of covenant of good faith and fair dealing; and (5) special damages. (ECF No. 17).

On August 3, 2016, the court dismissed without prejudice plaintiff's claims for (1) intentional interference with contractual relations and (2) intentional interference with prospective economic advantage. (ECF No. 53).

Plaintiff now moves for partial summary judgment holding that § 16 of the parties' agreement allows one party to renew the agreement for an additional term over the other party's objection. (ECF No. 33). Defendant countermoved for partial summary judgment holding that

**James C. Mahan**
**U.S. District Judge**

- 2 -

plaintiff's breach of contract claim based on defendant's termination of the agreement fails. (ECF No. 41). Defendant further moves for summary judgment on all of plaintiff's claims. (ECF No. 49). The court will address each in turn.

## II.     Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   Discussion**

In its motion, plaintiff argues that the court should grant partial summary judgment and hold that § 16 of the parties' agreement allows one party to renew the agreement for an additional term over the other party's objection. (ECF No. 33 at 1).

Under Nevada law, "to succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.")).

**James C. Mahan**
**U.S. District Judge**

- 4 -

"Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Whether a party has breached a contract and whether the breach is material are questions of fact. *Hoffman v. Eighth Judicial Dist. Ct.*, 523 P.2d 848, 850 (Nev. 1974). Contractual construction, however, is a question of law and "suitable for determination by summary judgment." *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990). A court "should not rewrite contract provisions that are otherwise unambiguous." *Id.* ("[C]ontracts will be construed from the written language and enforced as written."). "Policy terms should be viewed in their plain, ordinary and popular connotations." *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986).

The dealer resale agreement, dated April 21, 2010, between WMS and plaintiff, states in relevant part:

> **16. Term and Termination**. The initial term of this Agreement (the "Term") is one year from the date of acceptance. Thereafter, if either party delivers notice of its desire to renew the Agreement to the other party no less than 30 days prior to the expiration of the then current Term, the Agreement shall be automatically renewed for an additional year.
>
> > **16.1 Termination**. This Agreement may be terminated sooner in accordance with the following provisions:
> >
> > (a) Mutual agreement of the parties;
> >
> > (b) A material breach of this Agreement and failure to cure the breach within 30 days after notice is given to the other Party of such breach; or
> >
> > (c) Either party may terminate this Agreement if the other party ceases business operations, makes a general assignment for the benefit of creditors, becomes insolvent, files or has filed against it a bankruptcy petition or is required by any governmental authority to terminate the Agreement due to regulatory or licensing reasons.

(ECF No. 33-2 at 9–10).

In its response and countermotion, defendant does not dispute that plaintiff sent notice of its desire to renew the agreement 30 days prior to the expiration of the then-current term. (ECF No. 37 at 5). In fact, in its response, defendant attached the letter it received from plaintiff dated March 18, 2014, wherein plaintiff informed defendant of its intent to renew the agreement for

**James C. Mahan**
**U.S. District Judge**

- 5 -

another year.  (ECF No. 37-12).  Further, defendant does not dispute that the language of § 16 of the parties' agreement was accurately set forth.  (ECF No. 37).

Rather, defendant argues that it was permitted to elect not to renew the agreement and did not breach the agreement by doing so.  (ECF No. 41 at 7).  In particular, defendant contend that the agreement did not create a perpetual or unilateral right to extend the agreement.  (ECF No. 41 at 1).  Defendant thus concludes that partial summary judgment in its favor is proper because plaintiff has no claim based on defendant's termination.  (ECF No. 41).

The court disagrees.  The Supreme Court of Nevada has held that "when the language of a contract clearly provides that the contract is to have a perpetual duration, the courts must enforce the contract according to its terms."  *Bell v. Levlen*, 90 P.3d 1286, 1288 (Nev. 2004).  As the court found in its order dated August 3, 2016, the contract clearly states that if either party gives notice of its desire to renew the agreement 30 days prior to the expiration of the current term, the agreement will automatically renew for an additional term.  (ECF No. 53 at 4).  Therefore, the plain language of the contract states that the agreement is effectively perpetual.

Defendant further contends that plaintiff lost its purported right to unilaterally renew the agreement because it failed to deliver notice to defendant in the years of 2011, 2012, and 2013.  (ECF No. 37 at 11).  More specifically, defendant asserts that "TDN's failure to send written notice in any year before 2014 means it forever lost any purported right (no right existed) to 'unilaterally renew' the 2010 [a]greement over GCA's termination."  (ECF No. 37 at 12).

Defendant's contention is unpersuasive and unsupported.  Defendant fails to point to any term in the agreement or any evidence to support its contention that failure to provide notice of intent to renew terminates the parties' ability to unilaterally renew the agreement under § 16.  Further, as plaintiff's reply argues, defendant's contention is inconsistent with defendant's letter dated March 12, 2014, purporting to not renew the agreement for a subsequent term.  (ECF No. 54 at 4).

In light of the foregoing, the court finds that § 16 of the agreement allows one party to renew the agreement.  Accordingly, the court will grant plaintiff's motion for partial summary

**James C. Mahan**
**U.S. District Judge**

judgment (ECF No. 33) and deny defendant's countermotion for partial summary judgment (ECF No. 41).

Further, the court will deny defendant's motion for summary judgment (ECF No. 49) on plaintiff's claims for intentional interference with contractual relations, intentional interference with prospective contractual relations, breach of the covenant of good faith and fair dealing, and special damages. In its August 3rd order, the court dismissed plaintiff's intentional interference claims, rendering defendant's motion moot as it relates to these claims. (ECF No. 53).

As to the claim for breach of the covenant of good faith and fair dealing and for special damages, the court finds that genuine issues of material fact exist so as to preclude summary judgment. *See Hoffman*, 523 P.2d at 850 (holding that whether a party has breached a contract and whether the breach is material are questions of fact); *see also Hutton v. Gen. Motors Corp.*, 775 F. Supp. 1373, 1381 (D. Nev. 1991) (finding that the finder of fact must determine whether plaintiff is entitled to tort and contract damages on the breach of the implied covenant claim, which in turn was dependent upon a finding by the fact finder that the contract alleged exists).

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff TDN Money Services, Inc.'s motion for partial summary judgment (ECF No. 33) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant Everi Payments, Inc., f/k/a Global Cash Access, Inc.'s counter motion for partial summary judgment (ECF No. 41) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (ECF No. 49) be, and the same hereby is, DENIED.

DATED January 3, 2017.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**