UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TDN MONEY SYSTEMS, INC., | Case No. 2:15-CV-2197 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| EVERI PAYMENTS, INC., | |
| Defendant(s). | |

Presently before the court are six motions in limine filed by plaintiff TDN Money Systems, Inc. (TDN). (ECF Nos. 88–93). Defendant Everi Payments, Inc., f/k/a Global Cash Access,[1] Inc. (Everi) responded. (ECF Nos. 106–11).

Also before the court are five motions in limine filed by Everi. (ECF Nos. 94–98). TDN responded. (ECF Nos. 101–05).

**I.      Facts**

This is a breach-of-contract dispute arising from a dealer-resale agreement. (ECF No. 17). TDN sells ticket-redemption kiosks on behalf of manufacturers and retailers. (ECF No. 17). Everi is a manufacturer of these kiosks. (ECF No. 17).

TDN had a business relationship with Western Money Systems (WMS), a former Nevada business that manufactured and sold ticket-redemption kiosks. (ECF No. 17 at 3). On August 4, 2009, prior to this litigation, Everi acquired WMS. (ECF No. 17 at 3).

WMS entered into a deal with TDN on January 1, 2006. (ECF No. 20). The deal appointed TDN as an authorized non-exclusive reseller of WMS products. (ECF No. 20). TDN's duties

---

[1] This order refers to Global Cash Access, Inc. (GCA) and Everi Payments, Inc. together simply as "Everi," for the purposes of clarity and uniformity, as they are one in the same company.

**James C. Mahan**
**U.S. District Judge**

under the agreement were to make direct sales to end-users in its respective territory. (ECF No. 20). The agreement also allowed for WMS to retain its ability to sell directly to end-users. (ECF No. 20). However, sales made by WMS to end-users in TDN's territory entitle TDN to a commission provided that TDN provided the end-user with certain follow-up services. (ECF No. 20). The commission would be "equal to the difference between the net sale amount and the reseller price." (ECF No. 20).

On April 21, 2010, Everi and TDN entered into a new contract, containing the same terms as the previous contract. (ECF No. 17). On March 12, 2014, Everi sent a letter to TDN informing TDN of its intent not to renew the agreement for a subsequent term. (ECF No. 37 at 5). In response, on March 18, 2014, TDN sent a letter to Everi informing Everi of its intent to renew the agreement for another year. (ECF No. 37 at 5). The terms of the contract allowed for automatic renewal at the discretion of one party. (ECF No. 17). The contract stated that "if either party delivers notice of its desire to renew the Agreement to the other party no less than 30 days prior to the expiration of the current Term, the Agreement shall be automatically renewed for an additional year." (ECF No. 17).

On November 19, 2015, TDN filed the original complaint. (ECF No. 1). Later, on January 21, 2016, TDN filed an amended complaint alleging four causes of action: (1) intentional interference with contractual relations; (2) intentional interference with prospective economic advantage; (3) breach of contract; (4) breach of covenant of good faith and fair dealing; and (5) special damages. (ECF No. 17).

On August 3, 2016, the court dismissed without prejudice TDN's claims for (1) intentional interference with contractual relations and (2) intentional interference with prospective economic advantage. (ECF No. 53).

TDN moved for partial summary judgment, seeking a holding that § 16 of the parties' agreement allows one party to renew the agreement for an additional term over the other party's objection. (ECF No. 33). On January 3, 2017, the court granted TDN's motion, holding the following:

> [T]he contract clearly states that if either party gives notice of its desire to renew the agreement 30 days prior to the expiration of the current term, the agreement will

> automatically renew for an additional term. . . . Therefore, the plain language of the contract states that the agreement is effectively perpetual.

(ECF No. 70 at 6) (citing ECF No. 53 at 4).

Everi argued in opposition to summary judgment that in any event, TDN waived its right to unilaterally renew the agreement, arguing that "TDN's failure to send written notice in any year before 2014 means it forever lost any purported right . . . to 'unilaterally renew' the 2010 [a]greement over [Everi]'s termination." (ECF No. 37 at 12). This court disagreed, holding that defendant failed to point to any term in the agreement or any evidence in support of its contention that failure to provide notice of intent to renew terminates the parties' ability to unilaterally renew the agreement under § 16. (ECF No. 70 at 6). The court held that "§ 16 of the agreement allows one party to renew the agreement," and granted partial summary judgment for TDN. *Id.* at 6–7.

Now, the parties have filed several motions in limine to exclude certain evidence.

## II. Legal Standard

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. Motions *in limine* are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial evidence. *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions *in limine* may be used to exclude or admit evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Federal Rule of Evidence 609).

Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion."). "[I]n limine rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler*

- 3 -

*v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

"Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Conboy v. Wynn Las Vegas, LLC*, No. 2:11-cv-1649-JCM-CWH, 2013 WL 1701069, at *1 (D. Nev. Apr. 18, 2013).

### III.     Discussion

#### a.   TDN's motion in limine 1

TDN's motion in limine 1 seeks to preclude evidence contradicting the court's summary judgment order on the meaning of § 16 of the parties' agreement. (ECF No. 88). Everi responded. (ECF No. 106). TDN replied. (ECF No. 113). This motion is granted in part to the following extent: evidence offered for the purpose of contradicting a prior holding of this court—*i.e.* for the purpose of showing that this court's ruling on partial summary judgment was wrong—is not admissible because it is not relevant to the issues that remain outstanding for trial. Fed. R. Evid. 402. Further, such evidence is not probative and risks misleading the jury and confusing the issues. Fed. R. Evid. 403. Specifically, this means that Everi is not permitted to offer parol evidence for the purpose of showing that Everi's interpretation of § 16 of the contract is correct (*see, e.g.*, ECF No. 106 at 2 ln. 20–23) and this court's order on summary judgment is incorrect. The issue of the meaning of this provision of the contract has been conclusively decided by this court and is not an open question for trial.

However, this court will not preclude evidence offered for another, legitimate purpose just because it may have a tendency to contradict the court's prior ruling—such an order would be too broad and unnecessary. This court will remedy any potential prejudice from the admission of such evidence through jury instructions.

Finally, neither party's counsel is permitted to argue to the jury that § 16 of the contract means something other than what this court's order on partial summary judgment determined. (*See*

James C. Mahan
U.S. District Judge

ECF No. 70). Everi had the opportunity to dispute this interpretation of the contract during the motion for summary judgment proceedings, and failed to make a convincing case at that time. Therefore, the court foreclosed the issue from trial. Therefore, this motion is granted, in part, in accordance with the foregoing.

### b. TDN's motion in limine 2

TDN's motion in limine 2 seeks to preclude evidence that TDN did not send renewal notices in 2011, 2012, and 2013. (ECF No. 89). Everi responded. (ECF No. 107). This court has already ruled that Everi's argument for summary judgment—that TDN waived its right to renew the contract by failing to send a letter of removal in prior years—is unpersuasive and unsupported. (ECF No. 70 at 6). Everi has not pointed this court to any provision of the contract or any evidence that shows that the failure to provide notice of intent to renew one year would terminate the contract and a party's rights under § 16 in a later year. *Id.*

That said, this is not the question for trial: the question of whether TDN's purported 2014 renewal of the contract under § 16 was effectual depends on whether § 16 was still in effect at the time TDN attempted to execute it. There are many ways parties might renew a contract, and here, exercising § 16 of the contract is one of them. Whether the parties had somehow agreed, explicitly or implicitly, to continue operating under the contract through March of 2014 determines whether TDN had the right under § 16 to unilaterally extend the contract for an additional year thereafter.

Therefore, evidence of whether the contract was still in effect at the time that TDN purported to unilaterally renew it will be admissible. This includes the evidence that TDN did not send renewal letters under § 16 in 2011, 2012, and 2013 because—though not dispositive alone, as there might be other ways that the parties agreed to renew the contract—this fact would tend to eliminate one possible basis for claiming that it was still in effect. Thus, at this stage in the proceedings, this evidence appears relevant to a material issue. Fed. R. Evid. 401. TDN's motion in limine 2 is denied.

. . .

. . .

. . .

### c. TDN's motion in limine 3

TDN's motion in limine 3 seeks to preclude parol evidence that the contract allowed Everi to compete with TDN. (ECF No. 90). Everi responded. (ECF No. 108). TDN replied. (ECF No. 113).

In a nutshell, TDN argues that Everi's witnesses cannot testify regarding the meaning of the contract because they were not witnesses to the writing and formation of the original written agreement. This is not a valid basis, in itself, to deem their testimony inadmissible.

First, even if these witnesses did not observe or participate in the formation of the original written contract, they may have been present and have first-hand knowledge of the intent of the parties at the time of one of the several renewals of the contract. If any of the renewals of the contract occurred as the result of a mutual agreement between the parties (as opposed to a unilateral renewal under § 16), then the mutual understanding of the parties at the time of the renewal would govern the meaning of the new, updated contract.

Second, under the circumstances in which a court may consider parol evidence, evidence by witnesses present at the time of contract formation is not the only form of parol evidence a court may consider: "[B]oth integrated and unintegrated agreements are to be read in the light of the circumstances and may be explained or supplemented by operative usages of trade, by the course of dealing between the parties, and by the course of performance of the agreement." Restatement (Second) of Contracts § 209 cmt. a. (1981). TDN has not argued that the court cannot consider parol evidence here; indeed, TDN seeks to present parol evidence of the intent of the parties. (*See* ECF No. 108 at 1). To the extent that Everi's witnesses will testify to a valid form of parol evidence, such as the course of dealings of the parties after entering the contract, the evidence is relevant and thus admissible. Accordingly, TDN's motion in limine 3 is denied.

### d. TDN's motion in limine 4

TDN's motion in limine 4 seeks to preclude defendant's rebuttal expert from offering an alternative calculation of damages because the expert's initial report does not provide any such alternative calculation. (ECF No. 91). Everi responded. (ECF No. 109).

**James C. Mahan**
**U.S. District Judge**

- 6 -

TDN argues that Everi's rebuttal expert intends to testify to a specific alternative damages calculation (one substantially less than TDN's damages calculation) that did not appear in the rebuttal expert's original report, but only in a later supplemental report. The original rebuttal report contained only critiques of TDN's expert report. Everi counters that the supplemental calculation of damages provided by its rebuttal expert was necessitated by late-filed supplemental reports by TDN's expert. Everi asks the court to refrain from entering any pretrial order that limits the scope of its rebuttal expert's testimony.

A party seeking to introduce expert testimony at trial must disclose to the opposing party a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Failure to comply with that rule may preclude the party from, "us[ing] that witness or relevant expert information to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77 (1st Cir.2009) (quoting Fed. R. Civ. P. 37(c)(1)) (internal quotation marks omitted).

Caselaw regarding the exact extent to which an expert report limits the scope of his or her trial testimony may appear, on a superficial level, to conflict. Rule 26(a)(2)(B) requires the expert report to contain a "*complete* statement of *all* opinions the witness will express." And the Federal Circuit has held that "[a]n expert witness may not testify to subject matter beyond the scope of the witness's expert report unless the failure to include that information in the report was 'substantially justified or harmless.'" *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (citing Fed. R. Civ. P. 37(c)(1)). But taking this rule to the extreme—concluding that an expert cannot testify to *anything* not stated in the expert report— would produce an absurd result unintended by the drafters of the rule.

Instead, courts have explained that the rule "does not limit an expert's testimony simply to reading his report . . . . The rule contemplates that the expert will supplement, elaborate upon, [and] explain . . . his report" in his oral testimony. *Muldrow ex rel. Estate of Muldrow v. ReDirect, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) (citing *Thompson v. Doance Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006)). "The expert report, then, is not the end of the road, but a means of providing

- 7 -

adequate notice to the other side to enable it to challenge the expert's opinions and prepare to put on expert testimony of its own." *Heller v. D.C.*, 952 F. Supp. 2d 133, 139 (D.D.C. 2013). Indeed, one court has observed that "[t]estimony of an expert on matters within the expert's expertise but outside of the expert's report is not only permissible at trial, but the exclusion of such testimony may be reversible error . . . . An expert may testify beyond the scope of his report absent surprise or bad faith." *Bowersfield v. Suzuki Motor Corp.*, 151 F. Supp. 2d 625, 631 (E.D. Pa. 2001) (quoting *Fritz v. Consolidated Rail Corp.*, 1992 WL 96285, *3 (E.D. Pa. Apr.23, 1992) (Hutton, J.); citing *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193 (3d Cir. 1978)).

Further, underlying the Federal Rules of Civil Procedure is a "strong policy" favoring resolving cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Excluding expert testimony as a sanction for not including this exact information in the original expert report furthers the policy of resolving cases on the merits only if the new information genuinely surprised the opposing party and has deprived the opposing party of an opportunity to examine this new information and prepare a defense, if any, to its validity.

Here, this is not a situation of new expert testimony being heard for the first time at trial, to everyone's surprise. Rather, TDN has had notice of the rebuttal witness's alternative calculation of damages for months—it appeared in a supplemental expert report—and has had a more than adequate opportunity to prepare a trial defense to it. Any issue created by the timing of the rebuttal expert's disclosure of this calculation is therefore harmless. Further, the timing of the disclosure of the rebuttal witness's computation of damages is substantially justified: it was produced in response to numerous supplemental expert reports. Indeed, TDN filed another supplemental report after the alternative calculation of damages arose, so it has had a chance to grapple with the new information and prepare for trial.

Additionally, the rules regarding the timing and contents of supplemental reports do not preclude this testimony from trial. After submitting a complete, initial expert report, a party maintains a duty to supplement the report that "extends to both information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2); *Colony Ins. Co. v. Colorado Cas. Ins. Co.*, No. 2:12-cv-01727-APG-NJK, 2014 WL 12646048, at *1 (D. Nev. May

28, 2014). Still, "supplementation is not appropriate simply 'because the expert did an inadequate or incomplete preparation.'" *Allstate Ins. Co. v. Balle*, No. 2:10-CV-02205-APG, 2013 WL 5797848, at *3 (D. Nev. Oct. 28, 2013) (quoting *Rojas v. Marko Zaninovich, Inc.*, No. 1:09-cv-00705-AWI-JLT, 2011 WL 4375297, at *6 (E.D. Cal. Sept. 19, 2011)).

> A party may not use a supplemental report to disclose information that should have been disclosed in the initial expert report, thereby circumventing the requirement for a timely and complete expert witness report. Rather, supplemental under the Rule means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.

*Colony Ins. Co.*, 2014 WL 12646048, at *1 (quoting *Allstate Insurance*, 2013 WL 5797848, at *2). The supplemental report here filled the interstices of an incomplete report based on information that was not available at the time of the initial disclosure—namely, it responded to TDN's supplemental reports.

Regarding the timing of the supplemental reports, Rule 26(e)(2) requires supplementation of expert reports to occur "by the time the party's pretrial disclosures under Rule 26(a)(3) are due," which is 30 days before trial unless otherwise ordered by the Court. *Id.* at *2. "Generally speaking, supplementation of an expert report is proper where it is based on new information obtained after the expert disclosure deadline and the supplemental report was served before the time for pretrial disclosures." *Id.*

This court entered a scheduling order on January 21, 2016. (ECF No. 19). It never altered this order or entered a new one. This order set the following deadlines: expert disclosures were due by May 2, 2016; rebuttal expert disclosures were due by June 1, 2016; and the discovery cut-off was set for July 1, 2016.

There have been numerous supplemental reports submitted by both parties. As noted, although the original expert reports were due by May 2, 2016 (and rebuttal report by June 1, 2016), the supplemental reports were proper as new information arose or inaccuracies were discovered with the prior reports, as long as the supplemental reports were submitted more than a month before trial. *See Colony Ins. Co.*, 2014 WL 12646048, at *1. The trial date in this case has moved numerous times, but trial is now set for December 4, 2017. (ECF No. 131).

Regardless of the earlier trial dates, all of the supplemental expert reports have been served much more than 30 days before the currently-set trial date, including Everi's expert report containing the alternative calculation of damages. Thus, this court finds that there is no significant issue of surprise or prejudice caused to the other parties by the timing of these supplemental reports (or any issue that might have existed has been made harmless by the extensions of the trial date). Accordingly, the court will not strike any testimony based on the purpose or timing of the supplemental reports.

This motion is denied.

### e. TDN's motion in limine 5

TDN's motion in limine 5 seeks to preclude "evidence that TDN breached the agreement." (ECF No. 92). Everi responded. (ECF No. 110). This motion is too broad to grant—it does not specify exactly which evidence it wants excluded, and seeks an overbroad order from the court. *See Leonard v. Stemtech Health Sciences, Inc.* 981 F. Supp. 2d 273 (D. Del. 2013) ("the court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded."). Therefore, this motion cannot be granted now. If Everi attempts to introduce evidence at trial that it has failed to disclose during discovery, the issue can be readdressed then.

TDN also argues that Everi failed to plead material breach as an affirmative defense in its answer to the complaint, and therefore cannot pursue that theory of defense at trial. (ECF No. 92). But Everi alleged the following affirmative defense: "13. TDN failed to perform all duties and obligations on its part of any agreement, oral or written, and such acts or omissions bar TDN's recovery herein." Though broadly worded, this is sufficient to put TDN on notice that Everi pleaded a material breach affirmative defense.

Therefore, this motion is denied.

### f. TDN's motion in limine 6

TDN's motion in limine 6 seeks an order "permitting TDN to introduce the court's ruling that the agreement was perpetual." (ECF No. 93). Everi responded. (ECF No. 111). This motion is denied. Instead, the court will provide the jury with the necessary information about the court's prior rulings controlling this case in the form of jury instructions.

### g. Everi's motion in limine 1

Everi's motion in limine 1 seeks to exclude any evidence or arguments of punitive damages. (ECF No. 94). TDN responded. (ECF No. 101). This motion is denied—until further information about this case is revealed at trial, the court is unable to rule on punitive damages. The court already ruled that a genuine issue of material fact on this issue remains for trial. (*See* ECF No. 70). Therefore, the motion is denied.

### h. Everi's motion in limine 2

Everi's motion in limine 2 seeks to exclude TDN's proposed trial exhibits numbers 76A–GG. (ECF No. 95). TDN responded. (ECF No. 102).

The documents at issue are documents TDN supplied to its expert witness for him to use in preparing his expert report. (ECF No. 95 at 4). The documents were produced for the first time over a month after the close of discovery while the parties were preparing their pretrial order. *Id.* Also, the documents contained handwritten annotations, which Everi alleges are annotations by TDN's CEO meant for TDN's expert. *Id.*

*Discovery deadline*

The close of discovery in this case was July 1, 2016. (ECF No. 19). TDN disclosed these documents for the first time on August 12, 2016. (ECF No. 95-8).

"The sanction to preclude the party that failed to disclose potential witnesses or evidence is meant to prevent unfair play between parties, *i.e.* litigation by surprise." *Igbinovia v. Catholic Healthcare W.*, No. 2:07-CV-01170-GMN, 2010 WL 5070881, at \*5 (D. Nev. Dec. 7, 2010), *on reconsideration in part*, No. 2:07-CV-01170-GMN, 2011 WL 3424591 (D. Nev. Aug. 4, 2011). However, "Rule 37(c) allows an untimely disclosure if the disclosure is harmless." *Id.*

Here, the late disclosure was harmless. It is now over a year since the late disclosure and Everi has therefore had sufficient notice of the late-disclosed trial exhibits. The documents will not be excluded based on Rule 37. *See* Fed. R. Civ. P. 37(c)(1) (". . . unless the failure was substantially justified or is hamrless.").

. . .

. . .

*Handwritten annotations and other hearsay*

Many of the proposed exhibits contain handwritten annotations and typed documents apparently created for the purpose of litigation. Everi argues that these documents thus contain inadmissible hearsay. (ECF No. 95 at 5) (citing Fed. R. Evid. 802). TDN responded in opposition that it has already accommodated Everi's concern during the parties' meet and confer, agreeing to redact the handwritten annotations or use clean copies of the exhibits. (ECF No. 102 at 2). TDN states, "Accordingly, this motion should be moot as to every exhibit except 76A, I, K, and M. For those few remaining, [Everi] specifically demanded that TDN produce them." *Id.*

Thus, it appears that the parties have already reached a resolution of the admissibility of most of the documents challenged by this motion, except for the few noted by TDN above. TDN has agreed to redact the handwritten portions of the exhibits or use clean copies. This court agrees that TDN must do this: TDN has provided no argument as to how these handwritten notes are admissible, and thus, they appear to be inadmissible hearsay and must be redacted from the exhibits.

The fact that Everi demanded certain documents be produced in discovery does not deem them admissible at trial because the standard for discoverable evidence is broader than the standard for admissible evidence. A document is discoverable if it is relevant, nonprivileged, and the information sought is "proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Therefore, documents that constitute inadmissible hearsay will not be admitted just because Everi "specifically demanded that TDN produce them." (ECF No. 102). They must have basis for admissibility independent of Everi's discovery demands.

Finally, this court does not have enough information from the motion and response to rule definitively on the remaining issues raised in this motion. Of course, documents produced solely for the purpose of litigation are inadmissible because they are hearsay and do not constitute regularly kept business records. *See* Fed. R. Evid. 803(6). If this issue arises with any evidence a party attempts to introduce at trial, the court will rule on the issue then when it has more information.

James C. Mahan
U.S. District Judge

- 12 -

The motion is granted in part and denied in part in accordance with the foregoing.

### i. Everi's motion in limine 3

Everi's motion in limine 3 seeks to exclude the court's prior motion to dismiss order and summary judgment orders. (ECF No. 96). TDN responded. (ECF No. 103). This motion is granted in part and denied in part as follows: the court will not admit to the jury copies of its prior orders. Rather, the court will instruct the jury on this issues that have been already resolved in its prior orders in the form of jury instructions.

### j. Everi's motion in limine 4

Everi's motion in limine 4 seeks to exclude TDN's purported attorneys' fees and costs at the time of trial. (ECF No. 97). TDN responded. (ECF No. 104). This motion is granted to the following extent: evidence regarding attorneys' fees and costs is an issue to be handled post-trial, after a determination of liability. Fed. R. Civ. P. 54(d)(2).

Whether TDN would have been entitled to prove attorney fees as an element of special damages for its breach of covenant of good faith and fair dealing claim, *see* Fed. R. Civ. P. 54(d)(2) (allowing evidence of attorney fees and costs at trial if "the substantive law requires those fees to be proved at trial as an element of damages"), it has waived the right to do so here because it failed to disclose the evidence during the discovery period.[2] Fed. R. Civ. P. 37.

Therefore, any attorney fees it seeks must be proven through the regular course of a post-trial motion, with the relevant evidence in support attached then. Evidence of fees and costs will not be admitted at trial. The motion is granted.

### k. Everi's motion in limine 5

Everi's motion in limine 5 seeks to exclude testimony of Charles Lunden, TDN's expert witness, or exclude his purportedly improper supplemental reports and any testimony based upon them at the time of trial. (ECF No. 98). TDN responded. (ECF No. 105).

This motion in limine raises two primary issues: whether Lunden's expert opinion meets the standard for expert testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 583

---

[2] TDN argues, among other things, that it did not need to disclose this evidence during discovery because it is confidential. Regardless, it does not follow that TDN is entitled to surprise Everi with this information for the first time at trial after withholding it during discovery.

James C. Mahan
U.S. District Judge

- 13 -

(1993), and whether the timing of Lunden's supplemental reports violated the rules of civil procedure. This order addresses each, but in the reverse order.

*Supplemental expert reports*

After submitting a complete, initial expert report, a party maintains a duty to supplement the report that "extends to both information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2); *Colony Ins. Co. v. Colorado Cas. Ins. Co.*, No. 2:12-cv-01727-APG-NJK, 2014 WL 12646048, at *1 (D. Nev. May 28, 2014). Still, "supplementation is not appropriate simply 'because the expert did an inadequate or incomplete preparation.'" *Allstate Ins. Co. v. Balle*, No. 2:10-CV-02205-APG, 2013 WL 5797848, at *3 (D. Nev. Oct. 28, 2013) (quoting *Rojas v. Marko Zaninovich, Inc.*, No. 1:09-cv-00705-AWI-JLT, 2011 WL 4375297, at *6 (E.D. Cal. Sept. 19, 2011)).

> A party may not use a supplemental report to disclose information that should have been disclosed in the initial expert report, thereby circumventing the requirement for a timely and complete expert witness report. Rather, supplemental under the Rule means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.

*Colony Ins. Co.*, 2014 WL 12646048, at *1 (quoting *Allstate Insurance*, 2013 WL 5797848, at *2). The supplemental reports here primarily corrected inaccuracies or filled the interstices of an incomplete report based on information that was not available at the time of the initial disclosure, rather than simply disclosing information that should have been disclosed in the first disclosure.

Regarding the timing of the supplemental reports, Rule 26(e)(2) requires supplementation of expert reports to occur "by the time the party's pretrial disclosures under Rule 26(a)(3) are due," which is 30 days before trial unless otherwise ordered by the Court. *Id.* at *2. "Generally speaking, supplementation of an expert report is proper where it is based on new information obtained after the expert disclosure deadline and the supplemental report was served before the time for pretrial disclosures." *Id.*

This court entered a scheduling order on January 21, 2016. (ECF No. 19). It never altered this order or entered a new one. This order set the following deadlines: expert disclosures were due by May 2, 2016; rebuttal expert disclosures were due by June 1, 2016; and the discovery cut-

off was set for July 1, 2016. The trial date in this case has moved numerous times, but trial is now set for December 4, 2017. (ECF No. 131).

There have been numerous supplemental reports submitted by both parties. As noted, although the original expert reports were due by May 2, 2016 (and rebuttal report by June 1, 2016), the supplemental reports were proper as new information arose or inaccuracies were discovered with the prior reports, as long as the supplemental reports were submitted more than a month before trial. *See Colony Ins. Co.*, 2014 WL 12646048, at *1.

All of the expert reports were served much more than 30 days before the currently-set trial date. Thus, this court finds that there is no significant issue of surprise or prejudice caused to the other parties by the timing of these reports. Accordingly, the court will not strike any testimony based on the purpose or timing of the supplemental reports.[3]

### Daubert *expert-witness standard*

In considering whether TDN's expert testimony will meet the standards of *Daubert*, the court will consider the supplemental expert reports as well. Federal Rule of Evidence 702 controls the court's determination of whether to strike plaintiff's expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The central case interpreting FRE 702 is *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony

---

[3] Everi does not explicitly request the court to strike the expert testimony based on the lack of proper service of the original expert report, though it mentions that it was not properly served. In any event, the court notes that by Everi's own admission, it has actual notice and possession of the original expert report and has been aware of it and has relied upon it for over a year now. Therefore, this court would not exclude this testimony based on lack of service.

based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). This "gatekeeping obligation" requires "that all admitted expert testimony is both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). Expert testimony must be relevant and reliable, and it must "relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz–Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).

Exclusion of expert testimony is proper only when such testimony is irrelevant or unreliable because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

Expert testimony must be relevant to, and fit the facts of, the instant case. *See Daubert*, 509 U.S. at 591. Expert testimony relying on hypothetical, unrealistic business success is often ruled inadmissible, because "their hypothetical but for calculations usually rely on unrealistic ex ante assumptions about the business environment." *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 485 (3d Cir. 1998).

The Eighth Circuit ruled that expert testimony should not have been admitted that "did not incorporate all aspects of the economic reality of the stern drive engine market." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000). The court held that the deficiencies in the testimony formed the foundation of the expert opinion, and thus rendered the expert's conclusion "mere speculation." *Id.* (citing *Virgin Atlantic Airways Ltd. v. British Airways PLC*, 69 F. Supp. 2d 571, 580 (S.D.N.Y. 1999).

"Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 n.19 (1986) ("[I]n our view, the expert opinion evidence of [hypothetical] below-cost pricing has little probative value in comparison with the economic factors . . . that suggest that such conduct is irrational.").

Here, the parties do not dispute whether this expert is qualified or whether under "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand

the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Rather, they dispute his methodology, the assumptions he applied in drawing his conclusions, and the general reliability and relevance of his conclusions. *See* Fed. R. Evid. 702(b)–(d).

Everi's primary complaint about TDN's expert's methodology is that his calculations apparently rely on a hypothetical alternative universe—a "but for world," in his words—in which the expert assumed that TDN would have and would continue to enjoy unprecedented profits, as opposed to looking at actual profit and sales figures during the relevant time period. Everi argues that the expert's opinion does not rely upon any evidence or data to support his assumptions, but, instead, his assumptions are based solely upon the self-interested opinions of TDN's CEO that "but for" Everi's purported "wrongful conduct," TDN would have been successful in selling kiosks and services agreements to nearly every casino in the Northeast United States every three years without any competition in perpetuity. (ECF No. 98 at 13).

Everi points out, among other problems, that TDN's expert opines that TDN would have enjoyed profits in excess of $800,000 every year moving forward, when historically TDN's profits were only one or two hundred thousand a year, yet the expert offers no evidentiary basis for this assumed leap in success other than the say-so of the CEO. *Id.* at 13–14. Therefore, Everi argues, "[t]here is simply 'too great an analytical gap between the data and the opinion proffered' by [TDN's expert] to be admissible." *Id.* at 13 (quoting *General Elec. v. Joinder*, 522 U.S. 136, 146 (1997)).

TDN replies that the difference between its calculations and Everi's calculations is that TDN's projected profits were based on *gross* profits, minus saved costs caused by the breach, which is the relevant figure for the purposes of calculating damages in Nevada. (ECF No. 105) (citing *Covington Bros. v. Valley Plastering*, 566 P.2d 814 (Nev. 1977)).

TDN's expert testimony is divisible into two basic categories: the expert's calculation of past damages and his calculation of future damages.

For the past damages calculation, rather than rely on actual sales figures and calculate lost commission based on the formula for commission found in the parties' contract, TDN calculated hypothetical sales it would have made but for Everi's alleged wrongful interference in its market—

assuming TDN was able to sell in the contractual territory without competition from Everi. The parties' dispute whether Everi's direct sales to TDN's purported clients constituted a breach of the covenant of good faith and fair dealing. As this remains a disputed fact, so does the amount of sales that TDN might have enjoyed had Everi not done so. And predicting what sales TDN might have enjoyed had Everi not directly competed with TDN will inevitably involve some degree of reliance on assumptions and hypotheticals, though these assumptions and hypotheticals must be founded upon a reliable methodology and evidentiary basis to be sufficient for submission to the jury. Further, TDN's expert reports—especially the supplemental reports—show that the expert relied on more evidence than simply the word of interested parties to make his calculations.

For TDN's expert's future-damages calculation, the parties' core of disagreement seems to primarily rest on whether the proper calculation of damages is based on gross or net profits, and whether to account for Everi's purported wrongful interference with TDN's business, rather than there being a problem with the expert's professional opinion and methodology itself. Further, it remains an issue for trial whether Everi breached the implied covenant of good faith and fair dealing in targeting TDN's clients, and if so, how much future lost profit resulted from this breach.

In this case, the court is confident that any issues with the expert testimony's reliability and relevance, if any, will be adequately debunked by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," as these are the "traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). Accordingly, this testimony will be admitted, subject to changed circumstances at trial.

The motion to exclude this expert's testimony is denied.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED that TDN's motion in limine 1 (ECF No. 88) is GRANTED in part, in accordance with the foregoing.

IT IS FURTHER ORDERED that TDN's motion in limine 2 (ECF No. 89) is DENIED.

IT IS FURTHER ORDERED that TDN's motion in limine 3 (ECF No. 90) is DENIED.

IT IS FURTHER ORDERED that TDN's motion in limine 4 (ECF No. 91) is DENIED.

IT IS FURTHER ORDERED that TDN's motion in limine 5 (ECF No. 92) is DENIED.

IT IS FURTHER ORDERED that TDN's motion in limine 6 (ECF No. 93) is DENIED.

IT IS FURTHER ORDERED that Everi's motion in limine 1 (ECF No. 94) is DENIED.

IT IS FURTHER ORDERED that Everi's motion in limine 2 (ECF No. 95) is GRANTED in part and DENIED in part in accordance with the foregoing.

IT IS FURTHER ORDERED that Everi's motion in limine 3 (ECF No. 96) is GRANTED in part and DENIED in part in accordance with the foregoing.

IT IS FURTHER ORDERED that Everi's motion in limine 4 (ECF No. 97) is GRANTED.

IT IS FURTHER ORDERED that Everi's motion in limine 5 (ECF No. 98) is DENIED.

DATED November 6, 2017.

_____
UNITED STATES DISTRICT JUDGE